UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| WILLIAM VIRGIL FERRELL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 1:16-cv-00050 |
| NANCY A. BERRYHILL, | ) | REEVES/STEGER |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Defendant has objected [D. 48] to the Report & Recommendation of Magistrate Judge Steger [D. 46]. The R&R granted in part Plaintiff's motion for judgment on the administrative record [D. 35], and denied Defendant's motion for summary judgment [D. 36]. It further recommended that the administrative decision of the Commissioner be reversed, and that this case be remanded to the Commissioner for further administrative proceedings.

For the following reasons, Judge Steger's R&R is accepted in whole, and the Commissioner's decision will be reversed and remanded.

I.   PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, filed a complaint on March 3, 2016, challenging the Commissioner's denial of his application for Social Security disability insurance benefits [D. 1]. The Court initially dismissed this case without prejudice, and without reaching the merits, because Plaintiff failed to perfect service within the appropriate timeframe [D. 17, 18]. On appeal, the Sixth Circuit found this Court in error, and vacated the order of dismissal. The case was remanded [D. 24, 26].

Two months after remand, Plaintiff filed a motion for judgment on the administrative record, and Defendant filed a motion for summary judgment [D. 35, 36]. Judge Steger addressed both of these motions in his R&R, and ultimately recommended that the decision of the Commissioner be reversed and remanded for further proceedings [D. 46].

Plaintiff has filed two applications for disability insurance benefits.[1] The first application was denied on August 15, 2012, when the Administrative Law Judge (ALJ) found the claimant able to perform a limited range of light work, and a request for review was denied.

He filed his second application on November 5, 2012, alleging disability beginning October 8, 2010 (the onset date was later amended to August 16, 2012). After the claim was initially denied, Plaintiff requested a hearing, which was held on August 14, 2014. At the hearing, Karen Vessell appeared on Plaintiff's behalf, as a non-attorney representative.

## II. COMMISSIONER'S DECISION

A claimant who has filed an application is entitled to disability insurance benefits if they are i) insured, ii) have not reached retirement age, and iii) are disabled (the claimant must also be a U.S. citizen or meet certain lawful presence requirements). 42 U.S.C. § 423(a)(1)(A)-(E).

The administrative law judge (ALJ) denied Plaintiff's second claim because he determined Plaintiff was not disabled. "Disability" is defined in this instance as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

---

[1] Unless otherwise stated, these facts are drawn from the certified administrative record, provided by the Social Security Administration [D. 29]. The summary of the Commissioner's decision recounts the section of the record that discusses the procedural history, findings of fact, and conclusions of law [*see id.*, pp. 17-26].

2

The Social Security Administration (SSA) has promulgated a practical five-step test that ALJs use to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The five steps are considered sequentially, and if at any step a finding of disability or non-disability can be made, the review ends there. *Barnhart*, 540 U.S. at 24.

At the first step, the ALJ looks at the claimant's work activity; if the claimant is doing "substantial gainful activity," then the SSA will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a "severe" medical impairment; if the impairment is not severe, then the SSA will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ looks at a list of impairments that are presumed severe enough to render one disabled; if the claimant's impairment appears on that list, the SSA will find the claimant *is* disabled. *Id.* § 404.1520(a)(4)(iii); *Barnhart*, 540 U.S. at 24-25.

In this case, the ALJ found that Plaintiff was not doing substantial gainful activity (clearing step one), and that his impairment was severe (step two). But his condition was not so severe that he would be presumed disabled (preventing a finding of disability under step three).

At step four, the ALJ assesses the claimant's past relevant work and "residual functional capacity," which is defined as the "most you can still do despite your physical limitations." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(1). A claimant's residual functional capacity is defined categorically, on a scale ranging from "sedentary" to "very heavy" work. *See id.* § 404.1567. If the ALJ finds the claimant can still do her past relevant work in her current physical condition (i.e., given her residual functional capacity), the SSA will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). In this case, the ALJ found that Plaintiff could not perform his past relevant

work (as a landscape laborer) with his existing residual functional capacity (classified as "medium"). Thus, the ALJ moved on to step five, which is where Plaintiff's claim ran aground.

Step five incorporates the residual functional capacity assessment from step four, and requires the SSA to find whether the claimant can make an adjustment to any other work the claimant could perform given her age, education, and work experience. *Id.* § 404.1520(a)(4)(v). The ALJ must consider whether the claimant could be hired to perform this other work by determining if it exists in "significant numbers" in the region where the claimant lives or several regions in the country. *Id.* § 404.1560(c)(1). If the claimant can perform other work—and such work is available—the SSA will find the claimant is not disabled. *Id.* 404.1520(a)(4)(v).

The Commissioner found that Plaintiff could perform other work, given his residual functional capacity. Specifically, the ALJ relied upon testimony from a vocational expert in the prior claim (covering a different time period) that Plaintiff could perform unskilled medium jobs such as hand packager, machine cleaner, and linen room attendant, which existed in "significant numbers" [D. 29, p. 31]. The ALJ determined—based on this prior testimony—that Plaintiff could adjust to other work, and that this work was available. For that reason, he found Plaintiff was not disabled, and thereby denied his claim for disability insurance benefits.

### III. STANDARD OF REVIEW

The Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act, and a district court's review is limited to analyzing whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The district court may remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g).

## IV. APPLICABLE LAW

The issue of concern here is whether the ALJ applied the correct legal standards when he determined that Plaintiff was not disabled. Specifically, the court needs to address the impact of *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), on *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). The ALJ applied *Drummond*, but under the ruling in *Earley*, Judge Steger recommended remanding this case to the Commissioner.

### a. *Drummond*

In *Drummond*, the claimant had filed an application for disability insurance benefits and she was found to have a residual functional capacity for "sedentary" work. *Drummond*, 126 F.3d at 838. Under step five (the "other work" step discussed above), the ALJ must account for the claimant's age. SSA regulations discriminate between a younger person (under age 50), a person "closely approaching" advanced age (50-54), and a person of advanced age (55 or older). 20 C.F.R. § 404.1563. At the time of the decision, the claimant was 49 years old. Because she was a "younger" person, she was judged not disabled in spite of her "sedentary" capacity. *Id.*

She filed another claim, which covered a period of time that was unadjudicated in the previous claim. *Id.* at 839. She had a hearing on this new claim, and the ALJ found she had a residual functional capacity for "medium" work. *Id.* This determination was critical, because if the second ALJ found the claimant had a "sedentary" capacity (as the prior ALJ had), the claimant would have been entitled to disability benefits now that she was over 50, and "closely approaching" advanced age. *Id.* The Sixth Circuit addressed whether the second ALJ was bound by the prior ALJ's determination of the claimant's residual functional capacity. *Id.* at 840.

The claimant argued the second ALJ was bound to a finding of "sedentary" residual functional capacity under the principle of *res judicata* embodied in 42 U.S.C. § 405(h), which provides

5

that the "findings and decision of the [Commissioner] after a hearing shall be binding upon all individuals who were parties to such hearing." The Sixth Circuit found these principles did apply, and relied heavily on reasoning used by the Fourth Circuit in a similar case to reach that decision. *Id.* at 841-42; *see Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987). Under the principles espoused in *Lively* and two other Sixth Circuit decisions[2], the court held that once the Commissioner reaches a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by that determination in later hearings "absent changed circumstances." *Drummond*, 126 F.3d at 837.

### i. Acquiescence Ruling 98-4(6)

After *Drummond* was decided, the SSA published Acquiescence Ruling[3] 98-4(6), which applies in the Sixth Circuit, and explains that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Social Security Administration, AR 98-4(6), https://www.ssa.gov/OP_Home/rulings/ar/06/AR98-04-ar-06.html.

### b. *Earley*

In *Earley*, the claimant applied for disability benefits and was denied after the ALJ found she was capable of holding jobs that required only light physical exertion. *Earley*, 893 F.2d at 931. She applied again, arguing that she became disabled after the decision on her last application. *Id.*

---

[2] *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam) and *Senters v. Sec'y of Health & Human Servs.*, No. 91-5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991) (per curiam).
[3] "Acquiescence Rulings explain how SSA will apply decisions of the United States Courts of Appeals that are at variance with SSA's national policies in adjudicating claims." Social Security and Acquiescence Rulings: Preface, https://www.ssa.gov/OP_Home/rulings/rulings-pref.html.

The ALJ denied the claim because he thought—under *Drummond* and AR 98-4(6)—he was "precluded" from revisiting the earlier finding, unless the claimant offered new and material evidence of a changed condition. *Id.* The Sixth Circuit ruled that this decision was in error, and remanded to the district court, with instructions to send the case back to SSA for reconsideration. *Id.* at 935.

Importantly, *Earley* did not overrule *Drummond*. Instead, the court found that unusual facts in *Drummond* led to "some overstatement...but not to an incorrect outcome." *Drummond* was correct on the facts, because substantial evidence did not support the second ALJ's finding of residual functional capacity. *Id.* at 933. And it was correct on the law, because *res judicata* may apply in administrative proceedings against both the claimant and the Commissioner. *Id.* So "[i]f an individual...files a second application for the *same period of time* finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Id.* (emphasis added).

But when the period of time covered by the second disability claim is different than the first, *res judicata* should not apply. *Id.* ("[A] claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994") (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). This does not mean the second ALJ must start from scratch, and *Earley* makes it clear that the findings of the first ALJ are legitimate considerations that the second ALJ can account for when reviewing a second application. But an applicant "remains free to bring a second application [on a claim for a later time period] that introduces *no new evidence* or very little new evidence." *Id.* (emphasis added).

### c. District courts after *Earley*

Since *Earley* was decided, courts "have asked whether the ALJ, despite purporting to follow *Drummond*, gave the *new evidence* a fresh look. If so, then the ALJ's decision satisfied *Earley*;

7

if not, then remand was appropriate." *Johnson v. Comm'r of Soc. Sec.*, 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting district court cases) (emphasis added), *rep. and recc. adopted by* 2018 WL 6434778 (E.D. Mich. Dec. 7, 2018). Indeed, the general takeaway has been that *Earley* only requires ALJs to give "new evidence" a "fresh look." *See id.* at 15-16; *Lambert v. Comm'r of Soc. Sec.*, 1:18-CV-116, 2019 WL 336903 (S.D. Ohio Jan. 28, 2019), *rep. and recc. adopted by* 2019 WL 1125759 (S.D. Ohio Mar. 12, 2019) ("Because [the ALJ] gave a "fresh look" to the new evidence, a remand under *Earley* is not warranted"). And here, Defendant argues the second ALJ "complied with *Earley* by providing a fresh review of the evidence at hand, with multiple citations to the evidence dated after the 2012 decision" [D. 48, p. 2].

With respect to our sister district courts, this Court thinks the above reading of *Earley* is too restrictive. In *Earley*, the Sixth Circuit says the prior ALJ's findings are a "legitimate, albeit not binding" consideration. *Earley*, 893 F.3d at 928. As such, an applicant *may introduce no new evidence*, and, so long as the application covers a separate time period, have a fresh hearing. *Id.*

The point of *Earley*, in this Court's opinion, is that regardless of her chances of success, an applicant should have the opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing.[4] To be sure, an applicant who introduces no new evidence should not have "high expectations" of success, but the claimant should not come into the new hearing and face a presumption that the findings at the prior hearing were correct. *See id. Drummond* should be understood "as a practical illustration of the substantial

---

[4] This reading is bolstered by the *Earley* court's discussion of the distinction between *res judicata* (more easily understood as claim preclusion), and *collateral estoppel* (issue preclusion). As discussed, *Drummond* correctly held that the former doctrine should apply when the new application covers the same period of time, because an applicant cannot have the *exact* same claim reheard. *Earley*, 893 F.3d at 933. But because "human health is rarely static," the latter doctrine should rarely apply in this setting, as any earlier proceeding could rarely, if ever, have actually litigated and resolved whether a person was disabled at the later date. *Id.* The tangled case law and turgid Latin obscure what should be a fairly unremarkable proposition: Someone who was not disabled at one time may be disabled at a later time, and the prior determination of non-disability should not create a categorical presumption against the claimant that she was not disabled during the later claim period.

8

evidence rule," where a prior finding is so "important and probative" that it renders a "subsequent finding to the contrary unsupported by substantial evidence." *Earley*, 893 F.3d at 934 (quoting *Albright v. Comm'r of Soc. Sec.* 174 F.3d 473, 477-78 (4th Cir. 1999)[5] (quotation marks omitted)).

Thus, a court could conceivably apply *Earley* and affirm a pre-*Earley* ruling without remand to the Commissioner, but the test should be whether *Drummond* prevented the ALJ from considering *all* the relevant evidence, not whether the ALJ properly considered *new* evidence.

## V. APPLICATION

As discussed, Plaintiff's claim failed at the final hurdle—step five—where the ALJ determined Plaintiff could perform other work, given his age, education, work experience, and residual functional capacity [D. 29, p. 30-31]. To reach this decision—which requires a finding that the other work the claimant could perform is in fact available—the ALJ considered the testimony given by a vocational expert in the *prior claim*, and adopted those findings into the record on the present claim[6] [D. 29, p. 31]. A vocational expert did testify at the later hearing, but his testimony was restricted to a discussion of findings made in the prior report.

The decision to take the prior findings at face value is problematic. Just as "human health is rarely static," so is the economy. *See Earley*, 893 F.3d at 933. A consideration of the claimant's ability to find work *during the new claim period* seems necessary, and the ALJ's apparent failure to do so would violate both the spirit and the letter of the decision in *Earley*.

---

[5] *Albright* is a Fourth Circuit case that abrogated *Lively*, cited above, which had formed the basis of the Sixth Circuit's reasoning in *Drummond*. In *Earley*, the court drew a parallel between *Albright*'s impact on *Lively* with its own reading of *Drummond*. *Earley* 893 F.3d at 934 ("*Albright* is to *Lively* what this case is to *Drummond*").

[6] In fact, the factual finding from the first claim was adopted verbatim into the factual finding in the second claim. In both decisions, the ALJ wrote as follows: "The vocational expert testified that the claimant could perform unskilled medium jobs as a hand packager, machine cleaner, and linen room attendant. There are 8[,]000 such jobs in the local economy and 223,700 such jobs in the national economy. The vocational expert listed additional unskilled medium jobs that an individual of advanced age (55) such as the claimant could perform. These jobs included office helper, sorter, and textile checker/quality control. There are 264,000 jobs in the national economy and 5[,]000 such jobs in the local economy" [D. 29, pp. 31, 73].

9

In its objection to the R&R, Defendant argues that the section of the record which quotes *Drummond* and AR 98-4(6) was merely perfunctory, or "introductory" [*see* D. 48, p. 2]. Like the district courts in *Johnson* and *Lambert*, discussed above, Defendant argues that because ALJ gave the new evidence a fresh look, it therefore met the requirements of *Earley*.

First, Defendant's framing of the ALJ's findings understates the role that *Drummond* and AR 98-4(6) actually played in the ALJ's decision making process. At the beginning of the hearing, the ALJ informed the parties that the "the prior decision stands *until* the new material evidence warrants a deviation" [D. 29, p. 41]. This is a correct statement of AR 98-4(6), which requires the ALJ to adopt the prior findings "unless there is new and material evidence relating to such a finding." But the word "until" or "unless" casts a pall over the entire hearing, forcing the claimant to prove why the evidence presented at the prior hearing should not be binding.

Second, the record in this case illustrates the importance of this distinction. Plaintiff's claim failed because the ALJ adopted a finding that *did not apply to the time period in which Plaintiff claimed he was disabled*. To be sure, such evidence could be relevant or probative, and the ALJ could very well consider the prior report in this case. But as time passes, any analysis of available work in the area loses relevance.[7] Under *Earley*, ALJs considering a second claim are not bound by this prior evidence, but should weigh it on its own terms, as it relates to the new claim.

The application of the presumption in AR 98-4(6), interpreting *Drummond*, creates an unwarranted procedural burden for claimants at the second hearing. Because the ALJ imposed such a burden in this case, and the ALJ's failure to correctly weigh the past evidence worked to Plaintiff's disadvantage, the Court finds Plaintiff is entitled to a new hearing.

---

[7] Moreover, the burden is on SSA, not the claimant, to show that other work is in fact available. 20 C.F.R. § 404.1560(c)(2).

## VI. CONCLUSION

For the reasons given, Judge Steger's Report & Recommendation [D. 46] is **ACCEPTED IN WHOLE**. Plaintiff's motion on the administrative record [D. 35] is **GRANTED IN PART**, and Defendant's motion for summary judgment [D. 36] is **DENIED**. The Commissioner's decision is accordingly **REVERSED** and **REMANDED**, under this Court's authority in 42 U.S.C. § 405(g), for further administrative proceedings. On remand, the Commissioner should reevaluate Plaintiff's claim in light of the *Earley* decision as interpreted by this Court.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**